IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 22, 2008 Session

## STATE OF TENNESSEE v. ANNETTE TURNER MORROW

**Appeal from the Circuit Court for Maury County**
**No. 15297     Stella Hargrove, Judge**

_____

**No. M2007-01716-CCA-R3-CD - Filed November 19, 2008**

_____

The Defendant, Annette Turner Morrow,[1] appeals from the sentencing decision of the Maury County Circuit Court. The Defendant pleaded guilty to theft of property valued at over $10,000 but less than $60,000 and identity theft. Following a sentencing hearing, the trial court imposed an effective five-year sentence as a Range I, standard offender and ordered the Defendant to serve her sentence in the Department of Correction. On appeal, the Defendant contends that the trial court erred in denying her request for probation or other alternative sentencing. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Kyle E. Dodd, Pulaski, Tennessee, for the appellant, Annette Turner Morrow.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; and Mike Bottoms, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

This appeal pertains to the Defendant's guilty pleas and resulting sentences. A Maury County grand jury charged the Defendant with one count of theft of property valued between $10,000 and $60,000, a Class C felony, and two counts of identity theft as a result of stealing money from her employer. See Tenn. Code Ann. §§ 39-14-103, -105, -150. On December 14, 2006, the

_____

[1] While the Defendant testified that Morrow was not her legal last name, it is the policy of this Court to use the name as it appears in the indictment.

Defendant pleaded guilty to Class C felony theft and one count of identity theft. The other count of identity theft was dismissed. Sentencing was left to the discretion of the trial court.

A sentencing hearing was held on February 26, and March 2, 2007. The following underlying facts were established at the sentencing hearing.[2] For approximately two years, Dr. Indu Bali employed the Defendant as a bookkeeper at Columbia Multi-Specialty Medical Clinic, PC. After Dr. Bali's suspicions were aroused regarding unauthorized disbursements by the Defendant, Dr. Bali requested an accounting firm to conduct a financial review of her accounts. The investigation revealed that the Defendant overpaid herself, failed to make the appropriate 401K and insurance deductions from her paychecks, opened credit cards in Dr. Bali's name, and made personal purchases with business credit cards.

Emily Thigpen testified that she prepared the Defendant's presentence report. The Defendant picked up the questionnaire from Thigpen. Thigpen instructed the Defendant to fill out the questionnaire and schedule an interview. The Defendant never returned the form or contacted Thigpen, and the report was completed without the Defendant's input.

Tanya Cherry, a business evaluator and fraud investigator, stated that she was contacted by Dr. Bali's attorney to conduct an investigation of Dr. Bali's business records. During the investigation, she discovered that there were several different issues with the payroll: missing checks, more than one check to the Defendant during a payroll period, credits rather than debits for the Defendant's insurance deductions, false information entered into the books regarding payees, checks dated and cashed prior to the date reflected in the books, and failure to take the appropriate 401(k) deductions from the Defendant's checks.

Dr. Bali testified that she practiced medicine and nephrology in Columbia and that the name of her business was Columbia Multi-Specialty Medical Clinic. According to Dr. Bali, she hired the Defendant, who had a nurse's license, on December 1, 2001, to work as a secretary and perform nursing duties. The Defendant later acquired billing skills and was promoted to office manager in 2002. The Defendant's billing duties included payroll, accounts payable and receivable, and writing and issuing checks. Dr. Bali relayed that she "really trusted" the Defendant with the office expenses, even going so far as to give the Defendant a signature stamp to sign checks.

Dr. Bali confirmed that she authorized a bonus to the Defendant on only one occasion and that she did not authorize any of the extra paychecks to the Defendant. From each paycheck, the Defendant was supposed to contribute four percent of salary to her 401(k), which Dr. Bali matched. Dr. Bali also had no knowledge of checks issued by the office for the Defendant's personal purchases.

The Defendant obtained credit cards, without permission, with American Express and CitiBank in Dr. Bali's name. Dr. Bali knew of only one card, a Capital One account, and the

---

[2] The transcript of the guilty plea hearing is not included in the record on appeal.

Defendant was not to use this credit card for personal purchases. Dr. Bali became suspicious when she noticed a CitiBank letter addressed to the office. She was also leery because the Defendant had just purchased a new home. The State documented numerous unauthorized credit card purchases by the Defendant. Dr. Bali terminated the Defendant's employment in October 2004.

Dr. Bali incurred legal bills and had to pay an accounting firm to perform the review of her business records. When Dr. Bali was asked her feelings on what should happen to the Defendant, she replied, "I strongly feel that she should get some jail time, at least, because she has put me through a lot. I almost had a nervous breakdown when her creditors started hitting me, and they actually had a collection agency after me." The story received media attention, being printed in the local paper after the Defendant was indicted. Following that story, the post office notified Dr. Bali of a post office box in her name, of which Dr. Bali had no knowledge.

Brad Elliot, who had been an agent with the Tennessee Bureau of Investigation for approximately ten years, testified that he was the investigating agent in this case. During the preceding five years, he had been working as a field agent mainly in Maury and Giles Counties investigating embezzlement cases. When asked if he had noticed any trend in the past five years in the amount of embezzlement cases, he responded that there had "[d]efinitely been an increase in the white collar-employee theft-type cases that we are working." He relayed that he was presently involved in two other investigations similar in nature to the present case. The State then entered into evidence certified copies of seven pending indictments for embezzlement in Maury County. The State also compiled and entered into the record certified copies of Maury County embezzlement cases resulting in convictions.

The forty-two-year-old Defendant then testified on her own behalf. She stated that she had a high school diploma and a nursing degree. The Defendant had never been married but had two children by Ricky Morrow. She was currently employed with Complete Caregivers and Elk Valley for private duty nursing. Her income from Elk Valley was $480.00 to $560.00 a week.

Prior to the hearing, the Defendant filed for Chapter 13 bankruptcy and paid $375.00 a week under the bankruptcy plan. The Defendant also relayed that she had filed a lawsuit against Complete Caregivers because they allegedly deducted bankruptcy payments from her check but failed to forward them to the bankruptcy trustee. The Defendant testified that she was not permitted to sell her home while in bankruptcy.

The Defendant denied most of the allegations of misusing Dr. Bali's funds for personal gain. She testified that it was Dr. Bali who opened the American Express account and that it was given to her to use for office supplies. She did acknowledge that she made unauthorized personal purchases with office credit cards.

The Defendant did not have any prior criminal record. She expressed a willingness to repay Dr. Bali. She also stated that she would comply with the conditions of probation.

On cross-examination, the Defendant acknowledged that she was alone in the office frequently. According to the Defendant, she was not the only person who accessed the bookkeeping records, as Dr. Bali occasionally did so as well. She denied making changes to any checks and denied opening the CitiBank card without permission. However, the Defendant admitted to making personal purchases with the cards. The Defendant testified that she used the cards to "offset" what Dr. Bali could not pay her for vacation time, as a form of compensation. She also relayed that the statements for the credit cards were sent to a post office box.

At the conclusion of the sentencing hearing, the trial court imposed concurrent terms, as a Range I, standard offender, of five years for the theft conviction and two years for the identity theft conviction. Moreover, the trial court denied probation or any other form of alternative sentencing, determining that a sentence of total confinement was warranted. This appeal followed.

## Analysis

### I. Notice of Appeal

Initially, we will address the State's argument that the Defendant's notice of appeal was untimely. Judgments of conviction were entered on March 2, 2007. The Defendant filed a notice of appeal on March 6, 2007. Subsequently, the Defendant retained new counsel who pursued further action on her behalf in the trial court by filing a motion for new trial.[3] Following the denial of her motion for new trial, the Defendant filed another notice of appeal on July 30, 2007. Because the two appeals related to the same case, this Court ordered them consolidated. We conclude that the March 6, 2007 notice of appeal was timely. See Tenn. R. App. P. 4(a) (mandating that a notice of appeal to this Court shall be filed "within 30 days after the date of entry of the judgment appealed from . . . ."). Moreover, "[n]otwithstanding any other provision of law or rule of court to the contrary, in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interests of justice." Tenn. Code Ann. § 27-1-123; see also Tenn. R. App. P. 4.

### II. Alternative Sentencing

The Defendant contends only that the trial court erred by denying her probation or another form of alternative sentencing, arguing that she had no criminal record, that the State offered no evidence to indicate any upward trend in embezzlement cases, and that the circumstances of the offense did not warrant incarceration. She further claims the trial court ignored the presumption that she was a favorable candidate for alternative sentencing.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and

---

[3] A motion for new trial is not an appropriate motion to file following the entry of a guilty plea. State v. Quincy Alexander Norman, No. W2003-00635-CCA-R3-CD, 2004 WL 1773435, at *2 n.2 (citing State v. McClintock, 732 S.W.2d 268, 271 (Tenn. 1987)).

characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b);[4] State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W. 2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

A defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6); see also State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001). The following considerations provide guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

---

[4] We note that the legislature has recently amended several provisions of the Criminal Sentencing Reform Act of 1989, said changes becoming effective June 7, 2005. See Tenn. Pub. Acts ch. 353, § 22. However, the Defendant's crimes in this case predate the effective date of these amendments. Therefore, this case is not affected by the 2005 amendments, and the statutes cited in this opinion are those that were in effect at the time the instant crimes were committed.

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. See id. § 40-35-103(5).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is eight years or less[5] and the offense for which the defendant is sentenced is not specifically excluded by statute. See Tenn. Code Ann. § 40-35-303(a). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. See id. § 40-35-303(b). No criminal defendant is automatically entitled to probation as a matter of law. See id. § 40-35-303(b), Sentencing Comm'n Comments; State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. See State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, both physical and mental; the deterrent effect on the defendant; and the defendant's potential for rehabilitation or treatment. See id. If the court determines that a period of probation is appropriate, it shall sentence the defendant to a specific sentence but then suspend that sentence and place the defendant on supervised or unsupervised probation either immediately or after the service of a period of confinement. See Tenn. Code Ann. §§ 40-35-303(c), -306(a).

We note, however, that "the determination of whether the Appellant is entitled to an alternative sentence and whether the Appellant is entitled to full probation are different inquiries." State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Where a defendant is entitled to the statutory presumption of alternative sentencing, the State has the burden of overcoming the presumption of evidence to the contrary. State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), overruled on other grounds by Hooper, 29 S.W.3d at 9. Conversely, the defendant has the

---

[5] The legislature has subsequently modified probation eligibility to sentences of ten years or less. See 2005 Tenn. Pub. Acts ch. 353, § 7.

burden of establishing his or her suitability for full probation, even if the defendant is entitled to the statutory presumption of alternative sentencing. Id.; see Boggs, 932 S.W.2d at 477.

The Defendant pleaded guilty as a Range I, standard offender to a Class C felony and a Class D felony, making her a presumptive candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6). The trial court based the denial of probation or any other form of alternative sentencing primarily upon the nature and circumstances of the offenses and the deterrent effect such a denial would have on others likely to commit similar offenses. In so deciding, the trial court gave the following extensive and thorough rationale:

> The [c]ourt, in providing a sentence for this [D]efendant, has to consider several factors. One of the factors that the [c]ourt has to consider is providing an effective general deterren[t] to those likely to violate the law.

> We know that in *State versus Hooper*, 29 S.W.3rd page 1, Supreme Court of Tennessee, 2000, that deter[r]ence alone, if the record is complete, is enough to deny alternative sentencing. And the [c]ourt finds that the State has sufficiently supplied for the record the following:

> That deterrence is needed in this community, as well as this jurisdiction of our four counties. The [c]ourt also finds that the State has shown that this [D]efendant's incarceration could rationally serve as a deterren[t] to those similarly situated and likely to commit similar crimes.

> . . . .

> The [c]ourt also has to consider what confinement is necessary to avoid depreciating the seriousness of the offense. Considering the circumstances of the offense, and of course, the [c]ourt knows that this is an embezzlement, and the [c]ourt will discuss later the enhancement factor of trust and violation of trust.

> . . . .

> So the [c]ourt feels strongly that confinement is necessary to avoid depreciating the seriousness of this offense that has greatly, greatly grown, and not only in our county, but in our jurisdiction, and across the state.

> The [c]ourt has to consider the potential or lack of potential for rehabilitation or treatment. And under this factor, the [c]ourt can consider the candor or lack of candor—and the lack of accepting responsibility for her actions, and the lack of truthfulness on the part of the [D]efendant. . . .

. . . I want to go back and talk about the nature of the offense. These are the methods of embezzlement and identity theft in this case that this [c]ourt is considering.

Credits instead of debits, particularly when the insurance was added instead of deducted from the check. Misplaced checks, out of sequence. Wrong dates of payment. Checks to herself, instead of the vendor. Altered checks. Missing records, as to hours worked. Missing contribution to 401K, that were matched by the victim. Altered information, initially entered into the system, specifically as to payee. And in the opening of the two credit cards, without the knowledge of the victim, CitiBank and American Express. And in addition to that, putting her name on those credit cards, and in addition to that, changing the billing address to a P.O. box.

Insofar as rehabilitation and treatment, it is this [c]ourt's theory that [the Defendant] needs some kind of counseling, because I don't believe that she thinks that she's done anything wrong, or if she's done anything wrong, it's very little, and that she is the victim here. . . .

But the [c]ourt finds that her behavior indicates a total disregard for the laws and morals of society, and that no efforts are necessary to rehabilitate her, because she feels that she does not need any rehabilitation. She has been very clear about that.

And I also want to put in the record that as a record of these credit cards, [the Defendant's] family has been able to eat out, buy jewelry, groceries, collectables [sic], furniture, DISH networks, sporting goods, vacations, dentist bills, software, phones, shoes, clothing, glass, refrigerators, gas for her vehicle, and tires for vehicles, with a recurring vendors of K-Mart, Target, Wal-Mart, L.L. Bean, Hobby Lobby, Goodys, Kroger, and Abercromb[i]e & Fitch.

In State v. Hooper, 29 S.W.3d 1, 13, (Tenn. 2000), the Supreme Court addressed deterrence as a sole reason to deny probation or an alternative sentence; "we hold that a trial judge may sentence a Defendant to a term of incarceration based solely on a need for deterrence when the record contains evidence which would enable a reasonable person to conclude that (1) deterrence is needed in the community, jurisdiction, or state; and (2) the Defendant's incarceration may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." The criteria, for incarceration, favoring deterrence are: (1) whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole; (2) whether the Defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior; (3) whether the Defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case; (4) whether the Defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective; and (5) whether the Defendant has previously

engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions. Hooper, 29 S.W.3d at 10, 12.

Deterrence was not the trial court's sole basis for denying alternative sentencing; the trial court also based the denial of alternative sentencing on the seriousness of the offense and the need to avoid depreciation of the seriousness of the offense. In order for alternative sentencing to be properly denied based solely on the nature of the offense, the criminal act, as committed, must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985). Otherwise stated, the nature of the offense must outweigh all factors favoring full probation. Id.

We conclude that the record before this Court—which adequately illustrates both the seriousness of the Defendant's offenses and that deterrence is needed in Maury County for similar crimes—supports and justifies the trial court's denial of alternative sentencing. Agent Elliot testified that embezzlement cases were on the rise within the jurisdiction. The State entered into evidence pending indictments and convictions for embezzlement in Maury County, and the trial court thoroughly reviewed these documents on the record. The Defendant's intentional conduct was for profit and gain, and her actions received media coverage. Based upon this evidence, the trial court properly concluded that confinement would provide an effective deterrent to others. Additionally, the Defendant's criminal acts spanned a period of two years. She opened credit cards in her employer's name and purchased numerous items for her personal use, including clothing, refrigerators, vacations, phones, tires, and many other items for her and her family. She overpaid herself on multiple occasions and failed to make the appropriate 401K and insurance deductions from her paychecks. The circumstances of the offense support a finding that confinement is necessary to avoid depreciating the seriousness of the offense.

Moreover, the trial court found that the Defendant had been untruthful in her testimony. As noted by the trial court, her lack of candor with the court concerning her culpability was quite remarkable, consistently portraying herself as the victim. We consider the Defendant's lack of candor in her testimony as a poor reflection on her potential for rehabilitation. State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); see also State v. Michael R. Harness, No. E2004-01946-CCA-R3-CD, 2005 WL 2515780, at *5 (Tenn. Crim. App ., Knoxville, Oct. 11, 2005) (court denied alternative sentencing finding, among other factors, defendant had not shown enough accountability for the offense).

Upon de novo review and in accordance with the presumption of correctness, we are unable to conclude that the trial court erred or abused its discretion in denying the Defendant an alternative sentence.

## CONCLUSION

For the reasons stated above, we conclude that the trial court did not err in denying alternative sentencing for the Defendant. The judgment of the Maury County Circuit Court is affirmed.

_____
DAVID H. WELLES, JUDGE